No. 46,037

STATE OF KANSAS, *Appellee*, v. ALFRED C. MILES, *Appellant*.

(481 P. 2d 1020)

Opinion filed March 6, 1971.

*Frank D. Covell*, of Anderson, Covell, Hensel and Vincent, of Mission, argued the cause and was on the brief for the appellant.

*Mark L. Bennett, Jr.*, Assistant County Attorney, argued the cause, and *Vern Miller*, Attorney General, and *James W. Bouska*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HATCHER, C.: The defendant, Alfred C. Miles, was found guilty of possession of a pistol after having previously been convicted of a felony as that offense is described by K. S. A. 21-2611.

The defendant has appealed.

All of the issues raised by appellant are bottomed on the contention that firearms taken from an automobile which he was occupying were the subject of illegal search and seizure and therefore improperly admitted as evidence.

Preliminary to the trial a motion to suppress was filed, which read in part:

"Comes now the defendant appearing in person and by Frank D. Covell, his court appointed attorney, and moves the court for an order suppressing the evidence obtained as a result of an illegal search and seizure, which was conducted without a warrant and without probable cause."

Accompanying the motion to suppress was appellant's affidavit in support thereof, which stated in part:

"At the time of my arrest I was occupying an automobile owned by one, Percy Peoples which automobile was along side the highway facing in a southerly direction. The owner and driver of the car had gone for assistance since the car had overheated, requiring us to stop at this particular location. While waiting for Peoples to return the arresting officer approached and made

inquiry as to my purpose there. After explaining the situation I was asked to sit in the patrol car and my driver's license and other papers were examined. Following which a search of the automobile was made, which included unlocking the trunk of the car where the guns alleged to have been in my possession were located.

"There was no warrant obtained for this search and there was no probable cause justifying the search and *it was only after the discovery of the guns that I was placed under* arrest." (Emphasis supplied.)

At the hearing on the motion to suppress the facts were developed.

The chief of police of the city of Lenexa, Johnson County, Kansas testified in substance that while on duty on the 1st day of June, 1969, he had occasion to be dispatched to the scene of a possible car fire and upon arriving at that location fund the appellant seated in the passenger side of an old model Buick automobile bearing Oklahoma license tags. At that time he asked if the car had been on fire and appellant replied in the negative. He then asked appellant to get into his car to talk as it was extremely hot outside and that the air conditioner was on his patrol car. As he walked past the Buick and back to his automobile he had observed some type of pressurized can with a five or six foot length of rubber hose attached to it and a large metal bar approximately four feet in length on the back floorboard of the car. These items could be used as burglary tools. He asked the appellant where the owner of the automobile was and appellant replied that he had gone down the highway to get some water for the over-heated car.

At this time the appellant was not under arrest. After viewing the items on the floorboard of the automobile he asked the appellant if he could look through the automobile. The appellant replied "go right ahead." The officer then proceeded to search the front portion of the vehicle with the assistance of an off-duty officer who had stopped at the scene. The search revealed a large ring of keys under the right side of the front seat. Nothing was found of a suspicious nature in the passenger portion of the automobile other than the bar and pressurized can. The officer proceeded to the rear of the Buick and asked permission to search the trunk. The appellant replied, "Go ahead."

Upon opening the trunk of the automobile the officer first observed two shot guns and a rifle lying on the floor of the trunk. Next he saw a Coors beer box which closer examination revealed contained numerous hand guns of some type wrapped in newspaper. Under the left rear fender well he found a money bag from an

Oklahoma bank which contained a fully loaded snub nosed .38 caliber pistol.

The testimony of the officer given at the preliminary hearing was also introduced. At that hearing the appellant did his own cross-examining. We quote in part:

"Q: At the time I was sitting in your car; at the time you called me back when you first arrived and called me back to your car?

"A: At the time I was sitting in (pause) I told you to get in the car because it was hot and I had the airconditioning on.

"Q: Did you ask me for my identification?

"A: Yes, sir.

"Q: Did you open it? Do you know?

"A: Yes.

"Q: You say I was not under arrest?

"A: We did not even speak of arrest when you were sitting in the car.

"Q: I was being detained, right?

"A: (Pause) I asked you to get in the car and discuss with me.

"Q: Then you did detain me, right?

"A: (Pause) Figuratively speaking, no.

"Q: I voluntarily got in the car and gave you my identification?

"A: (Pause)

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q: Now you went and searched the car?

"A: Me and another officer.

"Q: You and another officer?

"A: Yes sir.

"Q: Had I at that time violated any laws?

"A: No sir.

"Q: In other words you searched the car strictly on suspicion?

"A: With your permission.

"Q: You asked me, is that correct?

"A: With your permission I searched the car.

"Q: But you did search it strictly on suspicion; no apparent reason; no law had been violated, just simply you thought.

"A: My answer is that I searched the car with your permission.

"Q: *You searched it with my permission,* but why did you want my permission?

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"A: From my knowledge as a police officer, after observing these two articles, as I have told the court, I felt it gave me reasonable grounds to be suspicious of the car." (Emphasis supplied.)

After the hearing on the motion to suppress the trial court ruled:

".   .   . At this time after having heard the evidence proffered by the respondent and after having heard arguments, will find that the motion to suppress should be and is hereby denied and overruled. The court will find that the evidence in question was lawfully secured by the officer based on a

consent to search in this case. And there is uncontroverted evidence that the defendant gave permission to the officer to conduct the search. . . ."

Appellant's contention that the search was unlawful and that there was error in not suppressing the evidence has no merit. We must agree with the conclusion of the trial court that "there is uncontroverted evidence that the defendant gave permission to the officer to conduct the search."

The case of *Wren v. United States,* 352 F. 2d 617, United States Court of Appeals, Tenth Circuit, cert. den., 384 U. S. 944, 16 L. Ed. 2d 542, 86 S. Ct. 1469, cited by the appellant, set out the rules for determining whether consent to search has been given. It was there stated:

"It is fundamental in our judicial process, as guaranteed by the Fourth Amendment, that we are secure in our persons, houses, papers and effects against unreasonable searches and seizures. This constitutional right, like all others, may be waived by voluntary consent. In order to constitute a voluntary consent it must clearly appear that the search was voluntarily permitted or expressly invited and agreed to by the person whose right is involved. In addition, such person must be cognizant of his rights in the premises, the consent must not be contaminated by any duress or coercion and the government has the burden of proof. The question of whether consent has been given is a question of fact for the trial court to determine in accordance with the foregoing accepted principles of law and subject to appellate review within the 'clearly erroneous' rule." (p. 618.)

There is no evidence to support a claim of any duress or coercion. The appellant's next contention reads:

"The appellant contends that whether or not there was reasonable cause for the officers to want to search and whether under the circumstances a consent to search was validly and properly given under the circumstances should have been matters submitted to the jury for their consideration and finding."

The question of cause to search a car was not an issue in the case. The officer saw equipment in the back seat which made him suspicious. He asked and received permission to make the search. A search may always be made if free and voluntary consent is given. (*Pekar v. United States,* 315 F. 2d 319.)

It might also be suggested that the uncontroverted evidence of consent left no question of fact to be determined. It left purely a question of law.

The judgment is affirmed.

APPROVED BY THE COURT.