(999 P.2d 283)

No. 83,090

STATE OF KANSAS, *Appellant*, v. ROGER MORRIS, *Appellee*.

Opinion filed March 3, 2000.

*Angela M. Wilson*, assistant district attorney, *Christine Kenney Tonkovich*, district attorney, and *Carla J. Stovall*, attorney general, for appellant.

*Harry E. Warren* and *Dawn Cook*, of Lawrence, for appellee.

Before MARQUARDT, P.J., PADDOCK, S.J., and THOMAS H. BORNHOLDT, District Judge, assigned.

PADDOCK, J.: The State appeals the district court's order suppressing evidence obtained pursuant to a warrant to search the home of Roger Morris.

The district court based its order primarily on the testimony of police officers who were involved in obtaining the search warrant.

The officers testified that they had received information that Roger Morris was involved with his brother Alan in the manufacture of methamphetamine at Alan's home. Pursuant to a search warrant, officers did indeed discover evidence of a methamphetamine lab in Alan's home.

Believing that drug evidence might also be found in Roger's home, Officer Flachsbarth of the Lawrence Police Department and Special Agent Hutchins of the Kansas Bureau of Investigation went to Roger's home to ask if he would consent to a search of his home. Upon arriving at Roger's home, Flachsbarth and Hutchins walked up on the front porch and knocked on the door. Receiving no response, Hutchins noticed there was a window that was approximately 6 feet above the ground and 6 to 10 feet to the right of the front door. The window was covered with a venetian blind with its slats closed. There was a 4- x 5- inch opening in the blind where the slats were broken. Hutchins, standing on the bottom step of the porch, looked through the hole in the blind to see if anyone was in the home. In order to see through the opening, Hutchins had to lean out from the porch. From that vantage point, he could see directly into the home through the opening in the blind. Hutchins observed what he believed to be paraphernalia used in the manufacture of drugs.

Armed with this information, Flachsbarth and Hutchins told Officer Khatib what they had observed, and Khatib prepared an affidavit for a warrant to search Roger's home. Khatib had not been told that Hutchins had peered through a hole in a closed blind to make his observations.

The warrant to search was supported by three statements that referred to Roger: (1) the statement from two informants that Roger was involved in the manufacture of methamphetamine, (2) a statement from an anonymous caller that Roger frequently visited Alan's home where Alan manufactured methamphetamine, and (3)

the observations the officers made while looking through Roger's window.

The district court ruled that the search was unlawful because Roger had a reasonable expectation of privacy in his home and by closing the blind, Roger had taken reasonable steps to protect his home from public view.

The district court also concluded that without the observations of the two officers, the other statements in the affidavit did not provide probable cause for a search because the statements did not mention Roger's home or anything that could be found therein.

Without question, the judge that issued the warrant had probable cause to do so based on the observations of the officers set out in the affidavit. The State embraces this argument and points out the rule that a person against whom a search warrant is directed may not dispute the matters alleged in the supporting affidavit, citing *State v. Jensen*, 259 Kan. 781, 787, 915 P.2d 109, *cert. denied* 519 U.S. 948 (1996). As with many rules, there is an exception where an attack on the affidavit is supported by allegations and an offer of proof under oath that the affidavit contains (1) material statements of deliberate falsehood or reckless disregard for the truth, or (2) deliberate omissions of material fact. *State v. Colbert*, 257 Kan. 896, 905, 896 P.2d 1089 (1995). Where, as here, information is omitted from an application for a search warrant, it should be determined whether the omission was material and whether it rendered the affidavit unreliable. *State v. Cowdin*, 25 Kan. App. 2d 176, 181, 959 P.2d 929, *rev. denied*, 265 Kan. 887 (1998). In other words, would the judge in the instant case who issued the search warrant have had probable cause to do so had he been informed of how the officer viewed the interior of Roger's home. The judge who suppressed the evidence thought the fact that the officer looked through a hole in the shade was material and if that fact had been included within the affidavit, it would have rendered the affidavit unreliable. We agree.

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights have been found to give special deference to the sanctity of privacy in an individual's home. *State v. Platten*, 225 Kan. 765, 769, 594 P.2d

201 (1979). The viewing by police into an area where an individual has a subjective expectation of privacy that society accepts as reasonable constitutes a search. *State v. Huber*, 10 Kan. App. 2d 560, 566, 704 P.2d 1004 (1985). By having the blind closed, Roger demonstrated a subjective expectation of privacy in his home. Such a demonstration of privacy is accepted by society as reasonable. By peering through the hole in the blind, the officers were prying into an area that was concealed. Further, the location of the window required that the officers had to lean over from the steps in order to see through the hole in the blind. Their action, absent a warrant, constituted an illegal search.

Other jurisdictions have faced similar fact patterns. In *Lorenzana v. Superior Court*, 9 Cal. 3d 626, 108 Cal. Rptr. 585, 511 P.2d 33 (1973), the court held that a police officer's warrantless observations through a window of a private home constituted an illegal search and seizure. The window was on the side of the house where there were no defined doors and walkways, and the officer peered through a 2-inch gap between the drawn shade and the window sill. 9 Cal. 3d at 630. In *Jacobs v. Superior Court*, 36 Cal. App. 3d 489, 111 Cal. Rptr. 449 (1973), the court held that the officers conducted an unreasonable search and seizure when they climbed onto a planter to look into a 2-inch aperture in a window which was covered by drawn curtains and closed venetian blinds. Similarly, in *Pate v. Municipal Court*, 11 Cal. App. 3d 721, 89 Cal. Rptr. 893 (1970), the court held that closed curtains demonstrated a reasonable expectation of privacy and that a search where the officers climbed onto a trellis to peer through a small crack in the curtains constituted an unreasonable search. The Supreme Court of Hawaii also held that an officer's search was unreasonable where the officer climbed on crates to peer through a 1-inch hole in the drapes and the blinds. *State v. Kaaheena*, 575 P.2d 462 (Hawaii 1978).

On the other hand, the Court of Appeals of Idaho held that the police officer's observations through sheer curtains of a mobile home were not an unreasonable search. *State v. Clark*, 124 Idaho 308, 859 P.2d 344 (1993). However, the officers did not have to climb up on something or lean over to see into the window, and

the window covering was sheer. These facts distinguish this case from the case at hand.

We find that the failure to inform the judge who issued the warrant that the officer had looked through an opening in a drawn blind was a material omission that rendered the application for the search warrant unreliable.

The State argues that the plain view doctrine is applicable here. We disagree. The plain view doctrine only has application when there was a lawful initial intrusion. *State v. Reno*, 260 Kan. 117, 122, 918 P.2d 1235 (1996). Such was not the case here. The initial intrusion was unlawful.

Additionally, without the evidence viewed by the officers the affidavit for the search warrant did not provide probable cause for the warrant to have been issued. The affidavit must contain sufficient information to establish a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Ruff*, 266 Kan. 27, 36, 967 P.2d 742 (1998). The statements that indicated that Roger may have been involved in the manufacture of methamphetamine at his brother's home do not establish a fair probability that the nefarious activity was also occurring at Roger's home.

Finally, the State argues that even if the warrant could not be justified on independent probable cause, the good faith exception to the exclusionary rule rescues the evidence seized under the warrant from exclusion. The good faith exception preserves evidence seized when the police obtain a warrant in good faith that was mistakenly issued on less than probable cause. *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984). The purpose of the rule is to deter police misconduct, not to punish good faith reliance on a judge's mistake. 468 U.S. at 916. Here, the judge who issued the warrant was not informed of a material fact as to how the contraband was seen. The mistake was not that of the judge, but instead was based on an illegal search. The good faith exception does not apply.

The district court correctly suppressed the evidence obtained by an illegal search.

Affirmed.