NOT DESIGNATED FOR PUBLICATION

No. 116,256

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JOHN ERIC COX, JR.,
*Appellee*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed September 1, 2017. Affirmed.

*Andrew R. Davidson*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Sam S. Kepfield*, of Hutchinson, for appellee.


Before BRUNS, P.J., MCANANY and BUSER, JJ.


BUSER, J.: The State of Kansas appeals the suppression of evidence seized during a search of John Eric Cox, Jr. A law enforcement officer stopped Cox as he was walking along the side of a street in Hutchinson. Although the area was dark, Cox did not give any indication that he needed assistance from the officer. However, the officer turned his vehicle around and parked in front of Cox. After obtaining Cox's name, the officer transmitted the information to dispatch and discovered an outstanding warrant. As a result, the officer placed Cox under arrest and found that he had a small bag of marijuana, a metal grinder, and a smoking pipe in his possession. Prior to trial, the district court

1

granted a motion to suppress the evidence, finding that the officer's encounter with Cox was not voluntary and that the stop was not for public safety. Because we find that the factual determinations made by the district court are supported by substantial evidence and support the legal conclusion reached, we affirm the suppression of the evidence seized following Cox's arrest.

FACTS

On the night of October 24, 2015, Officer Truan of the Hutchinson Police Department was on patrol. At approximately 11:20 p.m., he saw a man walking alone on the side of the street. Although Officer Truan did not suspect the man of committing any crime, he turned his patrol vehicle around and drove back toward the man. Officer Truan, who was in a marked patrol vehicle, stopped in front of the man and activated his warning or wig wag lights.

Officer Truan, who was wearing his police uniform, stepped out of his patrol vehicle and started asking the man questions. The man told the officer that he was walking to a friend's house. Officer Truan then asked the man his name, and he identified himself as John Cox. After obtaining this information, the officer immediately called dispatch to check for outstanding warrants. The dispatcher reported that there was a possible warrant for Cox. Evidently, because Cox was putting his hands in his pockets, Officer Truan placed him in handcuffs while the dispatcher was attempting to confirm the warrant.

The dispatcher confirmed that Cox had an outstanding municipal court warrant. Officer Truan then placed Cox under arrest and patted him down. In doing so, the officer found a small amount of marijuana and a smoking pipe in Cox's pocket. Officer Truan also found a small metal grinder in Cox's backpack with what he believed to be marijuana residue in it.

2

The State charged Cox with possession of marijuana in violation of K.S.A. 2015 Supp. 21-5706(b)(3) and possession of drug paraphernalia in violation of K.S.A. 2015 Supp. 21-5709(b)(2). Prior to trial, Cox filed a motion to suppress, arguing that Officer Truan had illegally seized him. The district court held an evidentiary hearing at which it viewed a video of the encounter on the night of October 24, 2015. At the conclusion of the hearing, the district court granted the motion to suppress.

In determining that the encounter was not voluntary and that Cox was improperly detained, the district court relied on the video of the encounter. Unfortunately, we do not have that opportunity because the video is not included in the record on appeal. We note that the party bringing the appeal, in this case the State, has the obligation to furnish a record sufficient to demonstrate any claimed error. *Kelly v. VinZant*, 287 Kan. 509, 526, 197 P.3d 803 (2008).

After reviewing the video, the district court found:

"[Officer Truan] stopped the [patrol] car and the way he stopped it no reasonable person would think they were free to leave. The court viewed the video. The overhead lights may not be on but there clearly are flashing lights occurring and under the circumstances and what I saw including testimony, no reasonable person would think that they [would be] free to leave.

"The officer appears to ask for the name and then immediately, almost immediately shines the flashlight in [Cox's] pocket and then takes out his clipboard and is writing down information, which the evidence to this court indicates that in fact we had no concerns about safety or welfare at that time. We were, in fact, making an investigatory stop."

Thereafter, the State timely filed this appeal.

3

ANALYSIS

On appeal, the State first contends that Officer Truan's encounter with Cox was voluntary and, as such, he was not improperly detained. We apply a bifurcated standard when reviewing a district court's decision on a motion to suppress. We first review the factual underpinnings of the district court's ruling to determine whether there was substantial competent evidence. We then review the legal conclusions reached by the district court under a de novo standard. In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). Because this case comes before us following a ruling on a motion to suppress evidence, the State bears the burden of proving the lawfulness of its search and seizure. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

The Fourth Amendment to the United States Constitution—made applicable to the states through the Fourteenth Amendment—and Section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. A warrantless search is per se unreasonable unless it falls within a recognized exception. *State v. Ryce*, 303 Kan. 899, 913, 368 P.3d 342 (2016); see *State v. Baker*, 306 Kan. ___, 395 P.3d 422, 427 (2017). The exclusionary rule is a judicially created remedy that prohibits the introduction of evidence obtained in an unreasonable search and seizure in order to deter future violations. See *Davis v. United States*, 564 U.S. 229, 236-38, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011); *State v. Powell*, 299 Kan. 690, 694-95, 325 P.3d 1162 (2014).

We turn first to the nature of Officer Truan's initial contact with Cox. Encounters with law enforcement officers generally fall into four categories:  (1) voluntary or consensual encounters; (2) investigatory detentions; (3) public safety stops; and (4) arrests. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016). Voluntary encounters are not considered seizures and do not trigger the protections of the Fourth Amendment.

4

On the other hand, investigatory stops require reasonable suspicion of criminal activity. *State v. Kermoade*, 33 Kan. App. 2d 573, 579, 105 P.3d 730 (2005).

An encounter between law enforcement and an individual will be deemed consensual if under the totality of the circumstances the officer's conduct conveys to a reasonable person that the person is free to terminate the encounter. *Reiss*, 299 Kan. at 298-99. This analysis depends on the voluntary nature of the stop and search. If a court finds that a seizure has occurred, it must then determine whether that seizure was reasonable. 299 Kan. at 297. When making this determination, courts "balanc[e] 'the public interest and the individual's right to personal security free from arbitrary interference by law enforcement officers.' [Citations omitted.]" 299 Kan. at 297.

As indicated above, the district court reviewed a video of the encounter between Officer Truan and Cox. Moreover, the district court heard Officer Truan's testimony. After weighing the evidence, the district court concluded that the encounter was not voluntary. In particular, the district court found that from "the way [Officer Truan] stopped [Cox] no reasonable person would think they were free to leave." Referring to the video, the district court noted that "there clearly are flashing lights occurring" and the officer "almost immediately shines [his] flashlight in [Cox's] pocket and then takes out his clipboard and is writing down information, which the evidence to this court indicates that in fact we had no concerns about safety or welfare at that time." Thus, the district court determined that Officer Truan was "in fact, making an investigatory stop."

Although the State disagrees with the district court's conclusion, we are not to reweigh the evidence or to determine credibility. Based on our review of the record, we find substantial evidence to support the district court's finding that Cox was not free to leave and that there was no reasonable suspicion for Officer Truan to detain him. Obviously, the district court did not find the officer's testimony that he was performing a public safety stop to be credible after comparing it with the video. Thus, we will not

5

replace our judgment for that of the district court regarding the factual determination that this was an investigatory stop without reasonable suspicion of criminal activity.

The State also contends that even if the district court did not err in concluding that this was an investigatory stop, the evidence found by Officer Truan should still be admitted because it would have been discovered anyway. An exception to the exclusionary rule is the inevitable discovery doctrine, which permits the admission of evidence that would have been discovered legally even if obtained illegally. See *Utah v. Strieff*, 579 U.S.___, 136 S. Ct. 2056, 2059, 195 L. Ed. 2d 400 (2016). The State must prove by a preponderance of the evidence that "'the unlawfully obtained evidence would have ultimately or inevitably been discovered by lawful means.'" *Baker*, 395 P.3d at 427 (quoting *State v. Walker*, 283 Kan. 587, Syl. ¶ 8, 153 P.3d 1257 [2007]).

Specifically, the State argues that, under *Strieff*, the discovery of an outstanding warrant for Cox was an intervening circumstance sufficient to attenuate the connection between Officer Truan's unlawful stop and the discovery of marijuana on Cox's person. However, at the suppression hearing, the district court found that the inevitable discovery doctrine set forth in *Strieff* did not apply to the facts of this case, stating:

> "[I]f I consider the three factors in the *Strieff* opinion I find the initial stop was not justified, that the defendant was in custody. A reasonable person would think they were in custody. And certainly the temporal proximity counts against the state and the purpose of the officer's misconduct was solely for that purpose, in the court's view, was to be able to run the defendant and run a record check and see what possible illegal activities . . . he could find when there's absolutely no indication of anything improperly happening."

In *Strieff*, the United States Supreme Court found an outstanding arrest warrant was "a critical intervening circumstance that . . . broke the causal chain between [an] unconstitutional stop and the discovery of [incriminating] evidence." 136 S. Ct. at 2063. In that case, a law enforcement officer conducting surveillance on a suspected drug house

6

noticed the defendant exit the house and walk away. The officer followed and eventually confronted the defendant in a nearby parking lot. Thereafter, the officer asked for, and received, the defendant's identification card and conveyed the information to the police dispatcher. A warrant check revealed the defendant had an outstanding warrant and he was placed under arrest. During a search incident to arrest, the officer discovered drugs and drug paraphernalia on the defendant's person.

Here, the district court found that the first *Strieff* factor—proximity in time weighed in favor of the defendant. However, the district court found that the second *Strieff* factor—intervening circumstances—weighed in the State's favor. The deciding factor, according to the district court, was the fact that Officer Truan's conduct was far more flagrant than the officer's conduct in the *Strieff* case. Specifically, based on a review of the video of the encounter and on Officer Truan's testimony, the district court found that the officer improperly stopped Cox "to be able to run the defendant and run a record check and see what possible illegal activities . . . he could find when there's absolutely no indication of anything improperly happening."

Kansas courts often examine "'an officer's regular practices and routines, an officer's reason for initiating the encounter, the clarity of the law forbidding the illegal conduct, and the objective appearance of consent.'" *State v. Moralez*, 297 Kan. 397, 416, 300 P.3d 1090 (2013). Here, the district court did not find Officer Truan's testimony for the stated purpose of the stop—for Cox's safety—to be credible. Moreover, the district court noted that based on its review of the video of the encounter, Officer Truan's conduct throughout the stop showed that he was conducting an investigatory stop from the outset and that he almost immediately began to ask questions. In addition, Officer Truan had no reason to believe that Cox needed help or that he was involved in criminal activity. Finally, as indicated above, the nature of the stop gave Cox no reason to believe that he was free to leave. Thus, we find substantial evidence in the record to support the district court's conclusion that Officer Truan's conduct toward Cox was flagrant.

Therefore, despite the presence of an outstanding warrant, we conclude that this case is distinguishable from the factual scenario presented in *Strieff*.

Affirmed.