(6 P.3d 914)
No. 83,636

STATE OF KANSAS, *Appellee*, v. CLINTON CARL BONE, *Appellant*.

—

Opinion filed May 26, 2000.

*Forrest E. Short*, of Short, Gentry & Bishop, P.A., of Fort Scott, for appellant.

*Nanette L. Kemmerly-Weber*, county attorney, *Bret A. Heim*, special assistant county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., GERNON, J., and JACK A. MURPHY, District Judge, assigned.

GERNON, J.: This is an appeal of a trial court's denial of a motion to suppress evidence. Clinton Carl Bone was convicted of possession of methamphetamine and having a false record of duty while operating a motor carrier. We affirm.

Bone was driving a tractor-trailer rig which Highway Patrol Trooper Westgate observed was leaking fluid. Westgate stopped Bone and determined that a fuel tank was leaking. Westgate advised Bone of the leak and performed a level 2 examination, which consists of visually inspecting the vehicle and the driver's records. Bone's log book was not in order, as he had logged future hours and more current hours than regulations allow.

Westgate asked Bone for any further paperwork that might explain some of the discrepancies in the log book. Bone produced a turnpike receipt for a time during which his log book indicated he was in a sleeper berth in Salina. He also produced a fuel stop receipt which was not recorded in his log book.

At this point, Westgate asked Bone's permission to search Bone's person, his vehicle, and any containers or compartments for drugs. Bone consented to the search.

Westgate searched Bone and found a small plastic bag containing a white powdery substance in his shirt pocket. Another trooper, who was assisting Westgate, searched Bone and found another packet of white powdery substance and a vial of white powder.

"When reviewing a trial court's decision as to the suppression of evidence, an appellate court normally gives great deference to the factual findings of the trial court. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate determination." *State v. Vandiver*, 257 Kan. 53, 58, 891 P.2d 350 (1995). The factual findings of the trial court will be reviewed for substantial competent evidence. *State v. DeMarco*, 263 Kan. 727, 732, 952 P.2d 1276 (1998).

The record shows no assertion that Bone was not a motor carrier. Commercial motor carriers are highly regulated by the State of Kansas. K.S.A. 74-2108(b) grants authority to the highway patrol to stop and examine such vehicles to insure compliance with state laws. K.S.A. 66-1324 addresses the inspection of motor carriers. Specifically, it regards the operation of inspection stations. The statute also provides:

"Nothing in this section shall be construed as prohibiting . . . any member of the state highway patrol from stopping any or all motor carriers, trucks or truck tractors for the purpose of conducting spot checks to insure compliance with any state law relating to the regulation of motor carriers, trucks or truck tractors."

Kansas has exhibited an intent to regulate motor carriers of passengers and property:

"Trucks carrying large cargos present a substantial hazard if not operated in a safe condition or if operated by sleepy or ill drivers, and this is particularly so when transporting cargo such as nuclear material, explosives, petroleum products, chemicals and other hazardous materials. The potential for a catastrophe is much greater than that represented by passenger cars, and considerably more is at stake than if merely checking the license of an automobile driver." *State v. Williams*, 8 Kan. App. 2d 14, 20, 648 P.2d 1156, *rev. denied* 231 Kan. 802 (1982).

The parties also seem to agree that Westgate had the authority to perform the level 2 examination. A level 2 examination consists of a visual inspection of the vehicle, including the coupling system, brakes, tires, lights, and other functioning parts of the vehicle. The examination also includes an inspection of the driver's records. K.A.R. 82-4-35a states that a driver shall hold available on request by the state highway patrol the following documents: registration receipts, authority cards, driver logs, bills of lading, way bills, freight bills, run tickets or equivalent documents and orders, and cab cards.

Bone first argues it was at this point that the examination was over and he should have been allowed to leave. Westgate testified that once the visual inspection of the vehicle was complete and he had checked Bone's paperwork, the level 2 examination would have been complete. However, Westgate also testified that due to the irregularities in the log book, he did not consider the examination over at that time. Keeping a false log book is a misdemeanor. In

light of the public interest in regulating operators such as Bone, Westgate felt the need to investigate further. Westgate asked Bone for permission to search the vehicle and Bone's person for drugs. Westgate indicated in his testimony that he was also looking for any receipts Bone may have had to explain the discrepancies in the log book.

Individuals engaged in a closely regulated industry have a significantly reduced expectation of privacy. *New York v. Burger*, 482 U.S. 691, 700-02, 96 L. Ed. 2d 601, 107 S. Ct. 2636 (1987); *U.S. v. Seslar*, 996 F.2d 1058, 1061 (10th Cir. 1993). This is illustrated by the authority granted the highway patrol to randomly stop these vehicles. Considering the public's interest in regulating motor carriers on the highways, Bone's inconsistent and false log book, and Westgate's testimony that he did not believe the examination to be over, his actions in keeping Bone there were reasonable.

Bone argues that the request to search his person was unrelated to the reason for the stop and was, therefore, unreasonable, and that Trooper Westgate had no reasonable suspicion that Bone was engaged in illegal transactions involving drugs or any other serious crime.

The United States Court of Appeals for the Tenth Circuit recently addressed the issue of regulatory stops and searches in *U.S. v. Burch*, 153 F.3d 1140 (10th Cir. 1998), *aff'g* 906 F. Supp. 592 (D. Kan. 1995). There, the court stated it will evaluate a traffic stop in two respects: " 'whether the officer's action was justified at its inception, and . . . whether the action was reasonably related in scope to the circumstances that first justified the interference.' " 153 F.3d at 1141 (quoting *U.S. v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 [10th Cir. 1994]). There is no dispute between the parties that Westgate's actions in stopping the vehicle were justified. The issue is whether his actions in requesting consent to search Bone's person were reasonable. This will be judged by whether the search was reasonably related to the circumstances that first justified the interference. When asked the basis for the request to search Bone's vehicle and person for drugs, Westgate responded:

"The basis for requesting is, first of all, since we did have a false log book I was asking for receipts to—or other receipts that he might have to prove the false log

book. Also, knowing that to drive these long kind of hours would require a long time behind the wheel and he would get tired. And I think possibly maybe he was—might have been using drugs, too, to help him stay awake."

In *Burch*, the operator of a semi-tractor/trailer rig was stopped by the Kansas Highway Patrol for a routine safety inspection. After examining the necessary paperwork, the trooper issued the operator a clean inspection report. After issuing the report and returning the paperwork, the trooper directed the operator to open the trailer so he could inspect the cargo pursuant to Kansas statutes. The trooper then discovered 538 pounds of marijuana inside. The operator contended that once the trooper had issued the clean inspection report and returned the operator's paperwork, the inspection was over and any further detention or search had to be supported by consent or reasonable suspicion. The court held that the issuance of the report did not necessarily terminate the inspection and did not remove further inspection from the scope of actions authorized by the circumstances that first justified the stop. 153 F.3d at 1143. *Burch* is representative of the caselaw in this area.

Here, however, the search extended beyond the truck to the driver's person. In its response to Bone's motion to suppress, the State defined a level 2 inspection as including an examination of driver's license, medical examiner's certificate and waiver, if applicable, and alcohol and drugs. Westgate testified that he had been a highway patrol officer for 25 years. It is reasonable that he would have knowledge of how motor carriers operate and the procedures for doing spot checks.

We conclude that given the experience of the officer and the clear legislative mandate to tightly regulate motor carriers for public safety, the officer's request to search Bone's person for drugs was reasonably related to the circumstances which grew from the original stop.

"A regulatory search is governed by the Fourth Amendment but does not require probable cause as defined traditionally by the courts. In general, probable cause, and the less stringent standard of reasonable suspicion, require particularized suspicion—that is, the officer must have some articulable basis to believe that the individual to be searched or seized has committed or is committing a

crime. In contrast, a regulatory search is justified if the state's interest in ensuring that a class of regulated persons is obeying the law outweighs the intrusiveness of a program of searches or seizure of those persons. *Burch*, 906 F. Supp. at 596.

The correct test is not reasonable suspicion but whether the State's interest in seeing that motor carriers comply with the laws outweighs the intrusiveness of the search or seizure. This test is clearly satisfied in this case. The State's interests, as set forth in *Williams*, far outweigh the intrusiveness of spot checks of the operators. This is particularly true in this case, when Bone had to be pulled over for a leaking fuel tank.

Affirmed.