(39 P.3d 668)

No. 86,193

STATE OF KANSAS, *Appellee*, v. JAMES E. WILSON, *Appellant*.

Opinion filed January 18, 2002.

*Nathan Webb,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Ian H. Taylor* and *Debra S. Peterson,* assistant district attorneys, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before KNUDSON, P.J., PIERRON and GREEN, JJ.

GREEN, J.: While visiting a friend's home, James E. Wilson was detained by police officers. Although the police possessed a warrant to search the residence, Wilson was not named in the search warrant. After Wilson consented to a search of his person, a police officer recovered a bag of crack cocaine from a pocket in Wilson's clothing. Before searching Wilson, the officer observed that Wilson posed no threat to the officer. In addition, the officer noted that no drugs or contraband were within Wilson's proximity. Finally, the officer observed that Wilson was not involved in any criminal activity. The issue before us is whether the above facts can provide reasonable suspicion justifying a temporary investigative stop. We conclude that the officer had no reasonable basis to detain Wilson, as we explain more fully below.

Although Wilson consented to the search, he argues on appeal that his consent was involuntary. In addition, Wilson maintains that there were no intervening circumstances which separated his consent from his unlawful detention. We agree and reverse and remand.

On December 18, 1999, Wilson was at a friend's home when police presented a search warrant on the residence. Although the warrant permitted officers to search for cocaine and drug paraphernalia, the warrant did not authorize the search of all persons present at the home. Upon entering the residence, officers told the

occupants of the house to get down on the floor. Wilson complied and was handcuffed.

Officer James Bray testified that after the house was secured, he turned his attention to Wilson. Officer Bray questioned Wilson without advising him of his *Miranda* rights. When Officer Bray asked Wilson his name, Wilson told him and indicated that he had identification in his pants pocket. Without asking permission to remove the identification, Bray reached into Wilson's pocket and retrieved the identification card. The officer then gave Wilson's identification card to another officer to check for outstanding warrants.

Officer Bray continued his interrogation of Wilson by asking him if he had any drugs on him, which Wilson denied. After Wilson denied possessing drugs, Bray asked Wilson if he could search him. Officer Bray testified that Wilson replied, "[Y]ou've got me in handcuffs, you can do whatever you want." Officer Bray testified that he informed Wilson as follows:

"After that I explained to him that, no, that wasn't necessarily true, that it was entirely—my exact words were, it was entirely up to him whether or not I searched him. Then I explained to him that he wasn't under arrest at that time, but that everybody in the house would be detained until we secured the house and had taken control of the residence."

Officer Bray, however, gave conflicting testimony regarding whether the house had been secured when he interrogated Wilson. The officer testified that "as soon as the other officers gave the all clear, then I started identifying [Wilson]."

After Officer Bray explained to Wilson that he could refuse the search, Wilson nevertheless consented. Officer Bray then searched Wilson and found a bag of crack cocaine in Wilson's pocket.

Wilson was charged with possession of cocaine. Before trial, Wilson moved to suppress the crack cocaine found in his possession because he was illegally detained and because his consent to search was not voluntary. The trial court found that the facts were as Officer Bray testified. The trial court further found that Wilson voluntarily consented to the search and denied the motion to suppress. Following a bench trial, Wilson was convicted of one count of possession of cocaine.

*Illegal Seizure*

Wilson's first argument on appeal is that the trial court erred in refusing to suppress the crack cocaine found on his person because the search was the result of an illegal seizure. Wilson maintains that he was illegally seized because he was detained after the residence was secured and without reasonable suspicion that he had committed or would commit a crime. According to Wilson, this illegal detention bars introduction of any evidence obtained as a result of the detention.

When reviewing the factual findings of the trial court on a motion to suppress evidence, we give great deference to the findings and uphold those findings if they are supported by substantial competent evidence. *State v. Bone*, 27 Kan. App. 2d 582, 583, 6 P.3d 914 (2000). In other words, if the findings of the trial court on a motion to suppress evidence are based on substantial evidence, the appellate court must not substitute its view of the evidence for that of the trial court. *State v. Chiles*, 226 Kan. 140, 144, 595 P.2d 1130 (1979). "Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved." *State v. Haskins*, 262 Kan. 728, Syl. ¶ 1, 942 P.2d 16 (1997).

Nevertheless, in *State v. Grace*, 28 Kan. App. 2d 452, 456, 17 P.3d 951 (2001), we stated that "the ultimate determination of the suppression of evidence is a legal question requiring independent appellate determination." More specifically, if a person consents to a search after an illegal stop or during an illegal detention, the court must evaluate whether the consent purged the taint of the earlier illegality. *State v. Rice*, 264 Kan. 232, 241, 955 P.2d 1258 (1998). If the trial court did not specifically apply the taint analysis to the consent, the appellate court is empowered to do so upon a sufficient record on appeal. *State v. Crowder*, 20 Kan. App. 2d 117, 122, 887 P.2d 698 (1994).

We must also bear in mind that, on a motion to suppress, the State bears the burden of proving the lawfulness of the officer's conduct in question. See K.S.A. 22-3216(2); *Grace*, 28 Kan. App. 2d at 456.

K.S.A. 22-2509 provides: "In the execution of a search warrant the person executing the same may reasonably detain and search any persons in the place at the time: (a) To prevent himself from attack, or (b) To prevent the disposal or concealment of any things particularly described in the warrant."

Our Supreme Court applied this statute in *State v. Vandiver*, 257 Kan. 53, 891 P.2d 350 (1995). Vandiver was one of six visitors in the apartment of a convicted drug offender when a police officer entered the apartment to execute a search warrant. The affidavit for the warrant stated that marijuana purchases had occurred at the residence, but did not "provide a factual basis for the issuing magistrate to determine that, other than the occupant, persons within the premises would be involved in or conducting illegal drug sales." 257 Kan. at 63. When the officer entered the residence, the apartment reeked of burnt marijuana, and a baggie of marijuana was in plain view on the floor. The officer conducted a pat-down search of Vandiver and removed a film canister containing marijuana from Vandiver's pants pocket. With regard to the pat-down search, the *Vandiver* court stated:

> "In circumstances where a police officer executing a search warrant of the premises observes unusual conduct by individuals not named in the search warrant which leads the officer reasonably to conclude in light of his or her experience that criminal activity may be afoot and that the persons with whom the officer is dealing may be armed and presently dangerous, the officer is entitled for the officer's protection and the protection of others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault the officer. See K.S.A. 1994 Supp. 22-2402; *Terry v. Ohio*, 392 U.S. [1,] 30-31[, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)]." 257 Kan. at 63-64.

In holding that the officer illegally searched and detained Vandiver, the court noted:

> "In this case, however, there is no substantial competent evidence that exigent circumstances existed to authorize the search of Vandiver. There is nothing to indicate that the officer was concerned with his safety. After entering the apartment and executing the search warrant, the officer did not recognize Vandiver, had no reason to believe that Vandiver had previously committed an offense, and did not have sufficient facts to arrest Vandiver for possession of the marijuana in plain view. Under these facts . . . [and] under K.S.A. 22-2509(b), the officer

executing the search warrant had no reason to detain Vandiver to prevent the disposal or concealment of any objects particularly described in the warrant." 257 Kan. at 64.

K.S.A. 22-2509 was also applied in *Rice*. Rice was one of six visitors at an apartment when officers arrived to investigate a complaint of loud music and marijuana use. Officers told the visitors to sit in the livingroom while they conducted a consent search of the apartment. During the 10-minute search, officers found marijuana. No one claimed ownership of the drugs. Before the guests could leave, each had to speak with one of the officers outside the apartment. During the interrogation, Rice consented to a search of his pockets and the officers found marijuana. The trial court suppressed the evidence and the State appealed. The *Rice* court held that Rice was unlawfully detained under K.S.A. 22-2509 because the evidence was clear that the officers "were not concerned that any of the visitors were armed, nor did they observe anything about Rice's appearance that would indicate that he had violated, was violating, or was going to violate the law." 264 Kan. at 239. The *Rice* court additionally held that Rice's consent to search was not voluntary.

The instant case is similar to *Vandiver* and *Rice* in that Wilson was a visitor at a residence when police detained and searched him. Using the rationale applied in those cases, we must determine whether the officer was justified in detaining Wilson. It is clear from the following testimony of Officer Bray that he was not concerned that Wilson was armed, nor did he suspect that Wilson would dispose or conceal anything described in the search warrant:

"Q. And I think you've already testified, correct me if I'm wrong, but at the time you encountered Mr. Wilson, you saw him, he didn't present any reasonable threat to you, to your person, did he?

"A. No.

"Q. And you didn't see any drugs or contraband in plain view associated with Mr. Wilson, did you?

"A. No."

Moreover, Officer Bray testified that he lacked reasonable suspicion that Wilson was involved in any criminal activity when he

approached him. See *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

Because Officer Bray testified that Wilson did not pose a reasonable threat, did not observe drugs or contraband in Wilson's proximity, and did not reasonably suspect that Wilson was involved in criminal activity, Officer Bray was not justified in his continued detention of Wilson after the house was secured. Moreover, it is important to note that Wilson's detention exceeded that addressed in *Vandiver* and *Rice* in that Wilson was handcuffed during the entire interrogation process and the officers retained his identification card. As a result, we find that Wilson was illegally seized.

*Taint Analysis*

Because the trial court did not find that Wilson was illegally seized, it did not engage in an analysis of whether Wilson's consent purged the taint of the improper police conduct. Because we have found that the officer unlawfully detained Wilson, a taint analysis becomes necessary. Fortunately, the factual record before this court is sufficient to conduct the taint analysis.

Consent to search removes the taint of a prior illegal seizure if it was voluntarily given under the totality of the circumstances. *Grace*, 28 Kan. App. 2d at 460. "This analysis requires consideration of the proximity in time of the Fourth Amendment violation and the consent, intervening circumstances, and particularly the 'purpose and flagrancy' of the officers' misconduct. [Citation omitted.]" *Crowder*, 20 Kan. App. 2d at 122. " '[W]hen the consent to search is preceded by a Fourth Amendment violation, the State, in addition to proving the voluntariness of the consent, must also establish a break in the causal connection between the illegality and the evidence thereby obtained. [Citation omitted.]' " *Grace*, 28 Kan. App. 2d at 460.

The *Rice* court determined that events between an illegal detention and a search did not purge the original taint. The factors the court relied on in holding that the subsequent consent did not purge the initial illegality were: (1) the lack of reasonable suspicion of criminal activity of the defendant, (2) the lack of intervening events between the illegal seizure and the consent, and (3) the

intensifying pressure applied by the officers to the visitors. 264 Kan. at 243-44. See *Grace*, 28 Kan. App. 2d at 460-61 (holding that consent to search did not purge the taint of an unlawful detention when no intervening circumstances sufficiently separated the consent from the unlawful detention).

Here, even if Wilson consented to the search, the State failed to establish a break in the causal connection between the illegal detention and the evidence recovered from Wilson's person. See *Grace*, 28 Kan. App. 2d at 460. First, Officer Bray admittedly did not have reasonable suspicion of any criminal activity on the part of Wilson. In addition, the illegal detention and the request for consent to search were in close temporal proximity. In fact, Wilson consented while he was illegally detained. The trial court noted that there was no break between the illegal detention and the consent because the police "didn't take the cuffs back off . . . before they started this questioning. You know [Officer Bray] not only cuffed [Wilson], then he proceeded to try to get consent from a person with cuffs on." The fact that Wilson was handcuffed at the time he consented to the search constitutes intensifying pressure on the part of the officer.

In finding that Wilson's consent was voluntary, the trial court relied on the fact that Officer Bray told Wilson that he did not have to consent to the search. However, this notification was not a sufficient intervening event to purge the taint of the unlawful detention. The notification is suspect because after Officer Bray notified Wilson that he did not have to consent to the search, Officer Bray told him that he would be released when the house was secured, even though the residence had been secured at that time.

In addition, it is difficult to discern the purpose of Officer Bray's request to search Wilson while he was illegally detained. The officer testified that he detained Wilson in order to secure the residence. While it may have been reasonable for the officer to briefly detain Wilson to secure the residence, it is unclear how a request to search Wilson while he was handcuffed would further the officer's objective of securing the residence. This variability in the officer's story does not fill us with confidence.

Considering the totality of the circumstances, we find that even if Wilson consented to the search, no sufficient intervening events, including Wilson's consent or the officer's notification, purged the taint of the illegal detention. As a result, the trial court's failure to suppress the evidence based on Wilson's illegal detention was clearly erroneous.

### Involuntary Consent

Even if Wilson had not been illegally detained, the trial court should have nevertheless suppressed the evidence because his consent to search was not voluntary under the totality of the circumstances.

Voluntariness of a consent to search must be determined from the totality of the circumstances and is a question of fact. *State v. Johnson*, 253 Kan. 356, 364, 856 P.2d 134 (1993). The essential inquiry in determining the voluntariness of consent is whether it was the product of the free and independent will of the accused. If a defendant's will has been overborne and his capacity for self-determination critically impaired, the consent offends constitutional standards under the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973). " 'The trial court's findings with regard to the existence and voluntariness of a consent to search will not be overturned on appeal unless clearly erroneous.' [Citation omitted.]" *Rice*, 264 Kan. at 242.

In considering whether Wilson's consent was voluntary, the trial court stated that

"It all boils down to whether or not that consent was voluntary, under all the facts and circumstances of this case. . . . I'm not sure if these visitors should have even been handcuffed under these circumstances, and I certainly don't think it was wise for the officer to ask this person to give consent while he had handcuffs on the person. I mean, obviously the fact that the defendant was wearing cuffs when asked to give this consent, that weighs in favor of this not being voluntary."

The trial court was clearly bothered by Officer Bray maintaining Wilson in handcuffs after the house had been secured. In *Reynolds v. Florida,* 592 So. 2d 1082, 1087 (Fla. 1992), the court noted that "[b]ecause of the inherently coercive nature of handcuffing, the

fact that one is under such restraint at the time consent is given will make the State's burden to show voluntariness particularly difficult."

The only finding made by the trial court to support its determination that Wilson's consent was voluntary was that Officer Bray told him that he did not have to consent to the search. However, the fact that the officer told Wilson that he could refuse the search is not dispositive. In denying the motion to suppress, the trial court failed to consider the totality of the circumstances.

Not only was Wilson handcuffed, but other factors comprising the totality of the circumstances indicate that Wilson's capacity for self-determination was critically impaired. For example, the officers had possession of his identification card at the time he consented to the search. Wilson may have felt compelled to consent to the search in order to recover his identification card. In addition, Officer Bray told Wilson that he would be released when the house was secured, and that promise may have induced Wilson to consent to the search so that he would be released more quickly. The impairment of Wilson's ability to consent to the search was evidenced by the fact that when he was initially asked to consent, Wilson gave an equivocal response. As a result, based on the totality of the circumstances, we find that the trial court's determination that Wilson voluntarily consented to the search was clearly erroneous.

In summary, the trial court's decision to admit the evidence found on Wilson was clearly erroneous on two separate grounds. First, the evidence should have been suppressed because under the totality of the circumstances, the evidence was found as a result of an illegal detention and no intervening event purged the taint of the illegality. Second, the trial court's decision to admit the evidence was clearly erroneous because under the totality of the circumstances, Wilson did not voluntarily consent to the search. As a result, the evidence should have been suppressed as fruit of the poisonous tree under *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Reversed and remanded.