NOT DESIGNATED FOR PUBLICATION

No. 120,197

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NORMAN RAY HARRIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; LORI BOLTON FLEMING, judge. Opinion filed March 27, 2020. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Michael Gayoso Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and LAHEY, S.J.

PER CURIAM: Norman Ray Harris was convicted by a jury of his peers of unlawful possession of a controlled substance and possession of drug paraphernalia. Harris now appeals, claiming the district court erred by denying his motion to suppress. He also claims the district court improperly instructed the jury on the definition of "recklessly." After a careful review of the record, we find no reversible error on the part of the district court and affirm Harris' convictions.

1

FACTUAL AND PROCEDURAL BACKGROUND

Corporal Quentin Turner of the Pittsburg Police Department was on patrol in the early morning hours of May 25, 2017. Due to a recent burglary at the Shamrock Mini Storage, officers periodically checked this property. At approximately 2:30 a.m., Turner observed a truck parked in front of an open storage unit; the truck's hood was open, and two people were standing by the truck—Tonya Denman-Johnson at the rear and Harris by the driver's door. Turner parked near the truck and approached Johnson, identified himself, and explained that he stopped because of the recent burglary. He asked Johnson for her identification; Johnson walked out to meet him, stated she owned the storage unit, showed Turner the unit's lock and key, and said she was removing blankets. However, Turner did not observe any blankets. Johnson provided her driver's license, and Turner confirmed her identity through dispatch.

Turner then asked Johnson for Harris' name; she identified him as Floyd Harris. Turner asked Harris to come to the back of the truck, and Harris provided the same name. Although he could not produce identification, Harris gave Turner a date of birth. When dispatch found no results, Harris said he was from Michigan. Dispatch again found no results. Harris eventually gave his real name and provided his social security number and correct date of birth. He explained to Turner that he gave false information because he had outstanding arrest warrants. Dispatch confirmed Harris' identity and found two outstanding arrest warrants. Turner arrested Harris and, while searching him, found a small pipe in his pocket containing a residue Turner believed, and which Harris stated, was methamphetamine. Jeffrey Ryder, a forensic scientist with the KBI, subsequently confirmed the residue to be methamphetamine.

The State charged Harris with unlawful possession of a controlled substance and possession of drug paraphernalia. Harris sought to suppress the pipe and drug residue evidence, arguing Turner had seized Harris without probable cause. At the motion to

2

suppress hearing, Turner testified he did not draw his weapon, use his emergency lights, speak in a harsh or commanding tone or threaten, intimidate, or physically restrain anyone; and neither Johnson nor Harris attempted to leave. The district court denied Harris' motion, finding the encounter voluntary based on the factors listed in *State v. Young*, 37 Kan. App. 2d 700, 157 P.3d 644 (2007). Alternatively, the district court found Turner had reasonable suspicion to investigate due to Johnson and Harris' presence at the storage unit in the early morning hour and the prior burglary.

At trial, Turner and Ryder testified, and the parties presented evidence. At the close of evidence, the district judge read jury instruction 8, which defined "intentionally," "knowingly," and "recklessly." The judge also read jury instructions 10 and 11, which described the elements of each crime but did not include the term "recklessly." A jury convicted Harris on both counts.

Harris timely appeals.

ANALYSIS

Harris raises two points of error on appeal. First, he claims the district court erred by denying his motion to suppress. Second, he claims the district court committed clear error by incorrectly defining "recklessly" in jury instruction 8. We will address each point in order.

I.     DID THE DISTRICT COURT ERR IN REFUSING TO SUPPRESS THE EVIDENCE?

Harris first argues the district court wrongly concluded his encounter with law enforcement was a voluntary one and Turner's search and seizure of him was supported by probable cause. Harris asserts Turner's multiple displays of authority indicated he was not free to leave. Harris also argues Turner lacked probable cause to detain him, claiming

probable cause evaporated when Johnson stated she was removing blankets and showed Turner the storage unit's lock and key.

A. *Harris preserved his objection to the admission of the State's evidence.*

The State's first response to Harris' argument is that he failed to preserve this issue on appeal, claiming Harris' continuing objection during voir dire instead of during the presentation of evidence was insufficient. The State argues Harris prematurely requested his continuing objection at voir dire; he should have waited until the district court swore in the jury and the parties presented evidence. Because he did not, the State claims the request was untimely, making the issue not properly before us.

"Preservation is [a] question of law subject to plenary review." *State v. Campbell*, 308 Kan. 763, 770, 423 P.3d 539 (2018). To preserve an argument for appeal, a party must make a timely and specific objection on the record. K.S.A. 60-404. "[A] pretrial objection must be contemporaneously renewed during trial or preserved through a standing objection." *State v. Berriozabal*, 291 Kan. 568, 580, 243 P.3d 352 (2010). The purpose of this contemporaneous objection rule is to provide the trial court the opportunity to avoid error by prohibiting improper evidence. *State v. Parker*, 277 Kan. 838, 845, 89 P.3d 622 (2004). As the materiality of a piece of evidence may become apparent only after the admission of other evidence, courts should wait until the evidence is offered to determine admissibility. See *State v. Holman*, 295 Kan. 116, 126, 284 P.3d 251 (2012), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). A district court satisfies the contemporaneous objection rule's purpose by granting a continuing objection and can avert error by excluding improper evidence. See *Parker*, 277 Kan. at 845.

The question arises that if a party must renew an objection at trial, when does trial begin? The State asserts voir dire is not part of a trial. K.S.A. 2019 Supp. 22-3405(a)

4

suggests: "The defendant in a felony case shall be present . . . at every stage of the trial including the impaneling of the jury and the return of the verdict." Our Supreme Court has noted: "As used in this statute, 'impaneling of the jury' means jury selection." *State v. Baker*, 249 Kan. 431, 442, 819 P.2d 1173 (1991). If a trial includes impaneling the jury and impaneling includes jury selection, then a party who requests a continuing objection during voir dire does so during trial. Harris objected before the State introduced its evidence. Harris' objection allowed the district court to consider whether to exclude the State's evidence at the trial scheduled later that day. The district court fulfilled the contemporaneous objection rule's purpose by granting Harris a continuing objection during voir dire. Harris preserved his challenge to the admission of the State's evidence.

B.      *Turner did not violate Harris' Fourth Amendment rights.*

Harris primarily contends the district court erred in denying his motion to suppress. When a district court denies a motion to suppress, we review the factual underpinnings for substantial competent evidence and the ultimate legal conclusion de novo. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). For substantial competent evidence, a court reviews the evidence in a light most favorable to the prosecution. "'Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights protect individuals from unreasonable searches and seizures. *Thompson*, 284 Kan. at 772. "A seizure occurs when there is a 'show of authority which, in view of all the circumstances surrounding the incident, would communicate to a reasonable person that he or she is not free to leave and the person submits to the show of authority.'" *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890 (2008). A seizure may result when a person interacts with a law enforcement officer; whether a seizure arises depends

5

on the type of interaction. There four types of citizen-law enforcement encounters: consensual or voluntary encounters; investigatory detentions; public safety stops; and arrests. *State v. Andrade-Reyes*, 309 Kan. 1048, 1052, 442 P.3d 111 (2019). Only the voluntary encounter and investigatory detention are relevant here.

A voluntary encounter is not a seizure under the Fourth Amendment. *State v. Andrade-Reyes*, 309 Kan. 1048, Syl. ¶ 2. But an investigatory detention is a seizure that must be supported by a "reasonable suspicion the person 'is committing, has committed or is about to commit a crime.' K.S.A. 22-2402(1)." *State v. Martinez*, 296 Kan. 482, 488, 293 P.3d 718 (2013). "Reasonable suspicion means a particularized and objective basis for suspecting the person stopped is involved in criminal activity." *State v. Thomas*, 291 Kan. 676, Syl. ¶ 9, 246 P.3d 678 (2011). Reasonable suspicion is determined from the view of an objective officer. 291 Kan. 676, Syl. ¶ 10.

To differentiate a voluntary encounter from an investigatory detention—that is, whether a person has been seized—we consider whether, "under the totality of the circumstances, the law enforcement officer's conduct conveys to a reasonable person that he or she was free to refuse the requests or otherwise end the encounter." *Thompson*, 284 Kan. at 775. However, that line is not always clear. *Young*, 37 Kan. App. 2d at 704. To demarcate that line, our court set forth a nonexhaustive list of factors indicative of a seizure: "activation of sirens or flashers, a command to halt, a display of weapons, or an attempt to control the suspect's ability to flee or the direction of travel during a chase." *Young*, 37 Kan. App. 2d at 713. We look to these factors as a whole; the presence or absence of an individual factor is not determinative. See *Thompson*, 284 Kan. at 811.

The Kansas Supreme Court has discussed additional relevant factors. Those tending to show a voluntary encounter include "knowledge of the right to refuse, a clear communication that the driver is free to terminate the encounter or refuse to answer questions, return of the driver's license and other documents, and a physical

6

disengagement before further questioning." 284 Kan. at 811. Other factors tend to show a seizure, such as

> "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory, the prolonged retention of a person's personal effects such as identification, a request to accompany the officer somewhere, interaction in a nonpublic place, absence of other members of the public, or the display of emergency lights." 284 Kan. at 811.

The time frame of the encounter can also indicate a seizure. See *State v. Williams*, 297 Kan. 370, 380, 300 P.3d 1072 (2013) (defendant walking alone on deserted street's sidewalk at 2:30 a.m. was relevant factor). Finally, an officer's subjective intent in stopping a person is relevant only if the person is made aware of that intent. See *State v. McGinnis*, 290 Kan. 547, 555, 233 P.3d 246 (2010).

The interaction between Turner, Johnson, and Harris had at least three phases: Turner's questioning of Johnson, Turner's questioning of Harris, and dispatch's confirmation of Harris' warrants. A different type of encounter may attach to each phase. For example, during the third phase, Turner had probable cause to arrest Harris based on the outstanding arrest warrants. The question is whether Turner violated Harris' Fourth Amendment rights before the arrest.

The first phase—questioning Johnson—lasted from Turner's initial contact to his running her name for a warrant check. The district court, when applying the *Young* factors to Harris, found they all weighed in favor of a voluntary encounter. The more expansive *Thompson* factors also point towards a voluntary encounter. Turner was the only officer at the scene. He did not draw his weapon or touch Johnson. He did not use an aggressive tone or language, and he did not retain Johnson's license for a prolonged period. Nor did Turner turn on his emergency lights or request that Johnson accompany

him anywhere. The stop occurred in a public space even though it was on private property.

Other factors run against a voluntary encounter. There is no indication Johnson or Harris knew they could refuse Turner's requests for information, and Turner never told them they could refuse. The stop occurred at 2:30 a.m. with no one else present. While Turner may have conveyed his subjective intent for initiating the encounter—at trial Turner stated he stopped to identify Johnson and Harris—he did not suspect them of committing a crime. But Turner approached them because of the prior burglary at the storage facility; his intent in stopping them was presumably to determine whether they were burglarizing the storage unit. Turner conveyed this intent to Johnson when he mentioned the past burglary and asked for her identification.

Weighing these factors, we find the encounter was voluntary. Turner did not exhibit his authority, nor did the circumstances indicate a reasonable person would not feel free to leave. Because of the time of the stop and the absence of other factors, the detention was not investigatory. Turner communicated his subjective intent by mentioning the prior burglary to Johnson before requesting her identification, but an investigative detention surely does not arise every time an officer discloses his or her purpose for talking with a person.

In *State v. Walker*, 292 Kan. 1, 8, 251 P.3d 618 (2011), the Kansas Supreme Court concluded an officer seized a man by conveying his subjective intent. There, a man approached a police officer because a thief had recently burglarized his truck. The man described the thief as a black man wearing a black shirt and shorts who left heading east. The officer drove east and saw the defendant, who matched that description, sitting at a bus stop. The officer approached the defendant, stated he fit the thief's description, and asked for identification. The Kansas Supreme Court held this constituted an investigatory detention:  the officer approached the defendant to determine whether the defendant was

8

the thief, the officer communicated that intention, and he requested the defendant's identification. 292 Kan. at 7-8.

In certain respects, this case is like *Walker*. Turner approached Johnson to determine why she was at the storage unit so early; he mentioned the previous burglary and he requested her identification. But unlike *Walker*, Turner was not investigating a crime that had just occurred; he was checking on the property based on a previous crime. And his mentioning the prior burglary conveyed the reason he stopped more than it communicated a suspicion Johnson was burglarizing the storage unit.

If this were an investigatory detention, reasonable suspicion made it lawful. Turner knew of a prior theft at the self-storage facility. And he saw a truck parked in front of and two people standing by an open storage unit at 2:30 a.m. Turner had a particularized and objective basis for stopping. A few dynamics changed during the second phase—the questioning of Harris. The second phase was largely a continuation of the first; apart from running Johnson's name through dispatch, there was no physical disengagement. On one hand, this may indicate a continuation of the type of interaction preceding it; however, the absence of an interruption may also indicate a voluntary encounter has turned into an investigatory detention. See generally *Thompson*, 284 Kan. at 811 (officer's physical disengagement before further questioning of suspect suggestive of voluntary encounter). Turner's requests towards Harris (to come to the back of the truck, to provide and clarify his identification, etc.) do not indicate a detention. Finally, unlike with Johnson, no evidence indicates Harris knew Turner's subjective intent for stopping them. Though Harris was standing on the other side of the truck during the first phase, no evidence indicates whether Harris overheard Turner's explanation. But it would be a reasonable inference to presume Harris knew of Turner's intent. All other factors remained the same.

Harris argues the stop became a seizure when Turner "commanded Mr. Harris to come to his location at the back of the truck and required Mr. Harris to remain there while he was asked questions about his identity and while the officer ran warrant checks." But Harris overstates the evidence. Turner testified he did not use a harsh or commanding tone. Nor does running a name through dispatch indicate Turner required Harris to remain, particularly because Harris only provided verbal information, not an identification card. Given that only Turner testified about what happened, under a substantial competent evidence standard, Turner's description controls.

We conclude the second phase remained a voluntary encounter. Turner made no show of authority towards Harris, and his shift to questioning Harris continued the first stage's voluntary encounter. Even if Harris knew Turner was questioning him because of the prior burglary, that does not necessarily communicate a subjective belief Harris was committing a crime.

Harris attempts to analogize his case to *State v. Grace*, 28 Kan. App. 2d 452, 458, 17 P.3d 951 (2001), where a panel of our court held a voluntary encounter transformed into an investigatory detention when officers took and retained the defendant's identification for 25 minutes while running a warrant check. But unlike *Grace*, Turner did not take anything from Harris, nor is there evidence about how long Turner questioned Johnson and Harris. *Grace* is not instructive. Even if questioning Harris became an investigative detention, Turner still had reasonable suspicion. The same facts supporting reasonable suspicion to question Johnson apply to Harris. But Johnson gave a reasonable explanation for her and Harris' presence at the storage unit—they were removing blankets from her rental, and she showed Turner the lock and key. This shows they were not burglarizing the unit and satisfied Turner's reason for stopping. Although Turner stated he did not question Johnson's explanation, an officer does not need to accept a person's explanation. See generally *State v. Schooler*, 308 Kan. 333, 347, 419 P.3d 1164 (2018) (noting "disconnect between the driver's explanations and the vehicle

10

documentation available on the scene warranted additional inquiries"). Turner did not observe any blankets, and, apart from the lock and key, Johnson did not prove it was her storage unit. And given the prior burglary, Harris and Johnson may have intended to burglarize another storage unit. Although these reasons are much weaker, they support reasonable suspicion to question Harris.

Turner did not unreasonably seize Harris. Based on the *Thompson* factors, Harris' interaction was voluntary. Alternatively, Turner had reasonable suspicion to believe Harris was committing a crime. The district court did not err by denying Harris' motion to suppress.

II.    WAS THE DISTRICT COURT'S JURY INSTRUCTION ON THE DEFINITION OF "RECKLESSLY" CLEAR ERROR?

For his last point, Harris challenges the inclusion of the definition of "recklessly" in jury instruction 8 because the charged crimes require a higher mens rea. The State charged Harris with unlawfully possessing methamphetamine and unlawfully possessing drug paraphernalia with the intent to use. Jury instructions 10 and 11, which were taken from PIK Crim. 4th 57.040 (2018 Supp.) and PIK Crim. 4th 57.100 (2015 Supp.), respectively, define "possession" as intent or knowledge. But jury instruction 8, taken from PIK Crim. 4th 52.010 (2015 Supp.), addresses culpable mental states generally and defined "recklessly" in addition to "intentionally" and "knowingly." The State acknowledges the error but argues it was not so egregious to warrant reversal.

As a preliminary issue, the parties disagree about what standard applies on review. Harris argues the harmless error standard applies because defining the incorrect mens rea violated Harris' constitutional rights by lowering the State's burden of proof. The State argues, as does Harris in the alternative, the clearly erroneous standard applies.

11

K.S.A. 2019 Supp. 22-3414(3) provides two methods to preserve an instructional error for appeal: A party must timely object to the instruction, providing the basis for that objection, or the instruction must be clearly erroneous. K.S.A. 2019 Supp. 22-3414(3). Our standard of review concerning the propriety of the instruction depends on the preservation method.

When reviewing whether a district court erroneously gave or withheld a jury instruction, we apply a three-step analysis: (1) Was the issue preserved? (2) Based on the claim's merits, did error occur? and (3) Was the error harmless? See *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). We use a de novo standard for the second step, applying a de novo standard for legal appropriateness and a sufficiency of the evidence standard for the factual appropriateness. See *State v. Plummer*, 295 Kan. 156, 161-62, 283 P.3d 202 (2012). The third step involves a de novo review of the entire record. *Williams*, 295 Kan. at 516; *Plummer*, 295 Kan. at 163. Because the first step depends on the existence of error, we must perform the second step analysis to determine whether clear error exists. *Williams*, 295 Kan. at 515-16.

The standard for the third step differs depending on whether a party objected below. If a party did not object to an instruction, the clearly erroneous method applies. Under the clearly erroneous standard, we must be "firmly convinced that the jury would have reached a different verdict had the instruction error not occurred" to reverse. 295 Kan. at 516. The burden of proof rests with the party claiming error. 295 Kan. at 516. If a party did object and the error involves a constitutional interest, we "'must be persuaded beyond a reasonable doubt that there was no impact on the trial's outcome . . . . If a right guaranteed by the United States Constitution is not implicated, [we] must be persuaded that there is no reasonable probability that the error will or did affect the outcome of the trial.'" *Plummer*, 295 Kan. at 162-63 (quoting *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 [2011], *cert. denied* 565 U.S. 1221 [2012]). With a constitutional interest, the party who benefited from the error carries the burden of production. *Williams*, 295 Kan. at 516.

Although Harris alleges a constitutional violation, he did not object to the instruction at trial; instead, he argues the instruction was clearly erroneous. Accordingly, we apply the clearly erroneous framework.

Under the first and second steps, it is readily apparent that the district court erred by defining "recklessly" because the crimes for which Harris was charged and convicted require knowledge or intent. K.S.A. 2019 Supp. 21-5706(a) criminalizes possession of methamphetamine, and K.S.A. 2019 Supp. 21-5709(b) criminalizes possession of drug paraphernalia. "'Possession' means having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2019 Supp. 21-5701(q). To be found guilty of possessing drugs and drug paraphernalia, the possession must be intentional or knowingly; recklessness is insufficient to support a conviction.

The parties dispute whether a jury would have reached a different decision had the district court omitted the definition of "recklessly." Harris contends the jury would have because the State had weak evidence supporting the possession of methamphetamine. Harris claims that because the pipe contained only a residual amount of methamphetamine, he may not have been able to perceive the residue; if he could not perceive it, carrying the pipe residue would be reckless, not knowing. The State counters by noting that Harris acknowledged, and the KBI confirmed, the pipe contained methamphetamine; since Harris carried the pipe, he either intended to have control over the methamphetamine or knew the pipe contained methamphetamine. No evidence supports Harris' reckless control argument.

Harris fails to firmly convince us that the jury would have reached a different verdict had the instruction error not occurred. The error was harmless; the jury would have reached the same result had jury instruction 8 not defined "recklessly." Turner found

the pipe in Harris' pocket, and Harris told Turner the pipe contained methamphetamine. Harris' statement shows he could perceive and knew of the pipe's residual contents. Since he carried the pipe in his pocket, Harris had a measure of access over it, which satisfies the "knowingly" avenue of possession. And carrying the pipe in his pocket, combined with knowing about the residue, indicates Harris intended to maintain joint or exclusive control over the methamphetamine residue; this satisfies the "intentionally" element. No evidence indicates Harris was unaware of the pipe's contents or that he did not know he carried the pipe. Absent that evidence, we cannot be firmly convinced the jury would have reached a different result had the court not defined "recklessly."

The misconception that "recklessly" is a relevant mens rea ran throughout the case. The State's complaint included "recklessly." At the beginning of trial, the judge mentioned "recklessly" when reading the charges from the complaint. And during closing arguments, the State stated the jury could convict Harris if he recklessly possessed the methamphetamine. But even under this more expansive view, ample evidence indicates Harris knew the pipe contained methamphetamine residue. Accordingly, we are still not firmly convinced the jury would have reached a different conclusion absent the mention of "recklessly." Although the district court erred, the error was harmless. The district court did not commit clear error.

Affirmed.